

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
~~XXXXXXXXXXX~~PERD
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable O. P. Lockhart
Chairman, Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. 0-5461
Re: Insurance companies organized
under the laws of the Republic
of Mexico doing business in
Texas.

Your letter requesting the opinion of this department
on the questions stated therein reads in part as follows:

"We ask your opinion upon the following
legal questions, which we certify are not moot
or abstract or premature but are actually con-
fronting this Department at this time in the
discharge of our official duties:

"1. Prior to May 10, 1943, the effective
date of Article 5012a, (Acts 1943, 48th Leg.,
p. 436, ch, 295, S.B. 357), did the provisions
of Article 4686, sec. 6 of Article 4859f, and
Articles 5054-5062b, inclusive, of Vernon's
Texas Civil Statutes, and Articles 568-572, in-
clusive, of the Penal Code, both as amended and
supplemented to that date, or any other appli-
cable statutes or legal principles, prohibit
(a) licensed and/or (b) unlicensed insurance
agents in Texas from issuing and delivering in
this State insurance policies for insurance
companies domiciled in the Republic of Mexico
(assuming such companies to be reputable and
financially sound) covering automobile risks
of all types, effective and operative only
upon persons and property while physically
situated within Mexico; such Mexican companies
not having complied with and obtained certifi-
cates of authority to conduct insurance business
in Texas under the laws of this State?

"2. Is Article 5012a aforesaid, alone or
in conjunction with the other laws of this State
referred to in question 1, above, permissive in

the sense that it merely authorizes Mexican in-
surance companies  at their option to domesticate
and obtain certificates of authority to conduct
the insurance business in this State if they so
desire, being free to conduct in Texas the acti-
vities described in question 1 if they do not so
obtain certificates of authority, or is Article
5012a mandatory in the sense that it requires
Mexican companies in comply with its requirements
as a condition precedent to exercising  in Texas
the privileges described in question 1?

"3.  If question 2 be answered to the effect
that Article 5012a is mandatory in the sense men-
tioned, then, as thus construed and applied, is
Article 5012a or any part or provision thereof
void or inoperative as applied to the activities
of such Mexican companies mentioned in question 1,
as being violative of any provision or provisions
of the constitutions of Texas and of the United
States; and if so, which of the statutory provi-
sions violates which of such constitutional provi-
sions?"

Senate Bill No. 357, Acts of the 48th Legislature,
Regular Session, 1943, provides:

"Section 1.  Any insurance carrier lawfully
organized under the laws of the Republic of
Mexico, or under the laws of any state thereof,
and duly authorized by such laws and by its
charter or articles of association and by cur-
rent license of the appropriate insurance regu-
latory authority of such Republic or any state
thereof to underwrite risks of the kinds and
in the circumstances hereinafter mentioned, may
issue in the State of Texas, under license of
the Board of Insurance Commissioners of Texas,
policies of insurance affording any and all kinds
of automobile coverage, accident insurance and/
or other casualty coverage, upon persons and/or
personal property, to be in force only while
such persons and/ or personal property shall be
physically within the boundaries of the Republic
of Mexico, by complying with the following re-
quirements:

"(a)  Such insurance carrier shall file with
the Board of Insurance Commissioners of the State
of Texas (called Board) a written application for
certificate to do business in this state, accom-

panied by a correct English translation of its
charter and by-laws, duly certified by two of its
principal officers and by the insurance regulatory
officials under whose supervision it operates in
the Republic of Mexico, and of all of its policy
forms, application forms, claim forms, and other
forms of every nature which it uses or expects to
use in underwriting the coverage hereby author-
ized to be written in Texas, all of which shall
be subject to the approval of such Board.

"(b)  Before admission, and annually there-
after, such carrier shall also file with such
Board a photostatic copy of its current license
or licenses to operate in the Republic of Mexico,
and shall file a copy of its latest financial re-
ports or statements, and of the latest examina-
tion reports of its affairs and financial condi-
tion by the insurance regulatory authorities under
which it operates in Mexico.

"(c)  Such carrier shall deposit with the
Treasurer of the State of Texas at least Twenty-
five Thousand ($25,000.00) Dollars in lawful money
of the United States or in securities eligible for
other casualty insurers licensed in Texas and ap-
proved by such Board, which deposit shall be liable
for all lawful claims and final judgments against
such insurance carrier, including taxes due the
State of Texas, and policy claims and other debts
and obligations incurred in the course of opera-
tions hereunder as provided herein, and such de-
posit shall be kept replenished from time to time
with like cash or approved securities to maintain
a minimum total deposit of Twenty-five Thousand
($25,000.00) Dollars.  Such deposit or theunin-
cumbered balance thereof shall be returned to such
carrier with approval of such Board upon withdraw-
ing from the business authorized hereby and upon
a showing to such Board that all of its policies
written in Texas hereunder have expired or have
been cancelled and that all of its claims and ob-
ligations upon policies written in this state
which would constitute lawful charges against
such deposit have been satisfied.

"(d)  Such carrier shall file with the Board
a power of attorney, in a form designated by the
Board, designating an agent or attorney-in-fact
upon whom legal process may be served within this

State, which appointment shall continue until re-
voked and a successor duly appointed by the car-
rier, and further authorizing service of legal
process upon the Chairman of the Board of Insur-
ance Commissioners of Texas and his successors in
office as alternate attorney-in-fact for such
carrier upon whom service of process may be had
in event such process cannot be served upon the
designated agent or attorney-in-fact for service
as herein provided, upon suits for any alleged
liability incurred in operations of the carrier
pursuant to this Act, with like effect as if such
process had been served personally upon the ap-
propriate persons, representatives or officials
of such carrier within its home jurisdiction in
the Republic of Mexico. In event process shall
be served upon the Chairman of the Board, as pro-
vided above, he shall immediately give written
notice thereof to such carrier and shall forward
such process by registered mail, postage prepaid,
and properly addressed to the president of such
carrier at its home office as furnished to the
Board; and no judgment by default shall be taken
in any such cause until after the expiration of
forty (40) days after said process and notice
shall have been received at the home office of
such carrier. Until rebutted, the presumption
shall obtain that such notice and process was re-
ceived at the home office of the carrier on the
fifth (5th) day after being deposited in the mail
at Austin, Texas, as herein provided. The State
Treasurer, upon the approval of the Board, shall
pay from the deposit required herein any unsatis-
fied final judgment obtained against such carrier
in any court of competent jurisdiction in Texas
based upon such substituted service as author-
ized herein.

"(e) Such carrier shall pay the State of
Texas annually a premium or occupation tax upon
its gross premium income from policies issued
in Texas according to the reports made to the
Board each year, and shall pay such other fees,
charges and taxes upon the same basis as like
insurers licensed to do the same kinds of busi-
ness in the State of Texas are required by law
to pay; and shall make the same reports as such
other licensed carriers, but in such adapted
forms as may be prescribed by such Board for such
purposes.

"(f)   The coverage hereby authorized shall be underwritten only at rates prescribed or approved from time to time by such Board.

"(g)   Such Board shall have the authority to examine at any or all times, at the expense of such carrier, the affairs and condition  and all books and records of such carrier for  the purpose of ascertaining its financial condition and solvency, and its compliance with the applicable laws of this state and of its home jurisdiction.

"(h)   Such carrier shall file in English a document executed by its officials expressly accepting the terms of this Act and agreeing that such Board may at any time in its lawful discretion revoke, suspend or refuse to grant or renew the license of such Board to such carrier to conduct in Texas the business hereby authorized, upon a determination by such Board that it is insolvent or in dangerous financial condition, or that it has violated any applicable law of this state or of its home jurisdiction.

"(i)   It shall underwrite business in Texas only through its resident Texas agents thereunto duly authorized by it in writing and duly licensed by such Board under the provisions of Article 5062b (Acts 1941, 47th Legislature, page 374, Chapter 212), as the same now exists or as it may be amended hereafter, and the license issued to such Texas agents shall specially authorize them to write for such foreign carriers complying herewith the risk authorized hereby.

"Sec. 2.   All laws and parts of laws in conflict herewith are hereby repealed only to the extent of such conflict.

"Sec. 3.   If any Section or portion of Section of this Act shall for any reason be declared invalid by a court of competent jurisdiction, such adjudication shall not affect the validity of any other Section or portion of Section of this Act.

"Sec. 4.   The importance of this legislation, and the immediate and urgent need of the reforms to be effected hereby, create an emergency and  an imperative public necessity demanding the suspension

of the Constitutional Rule requiring that all
bills be read on three several days in each House,
and said Rule is hereby suspended, and this Act
shall take effect and be in force from and after
its passage, and it is so enacted."

Apparently Senate Bill No. 357, supra, was enacted
by the State through its Legislature in the exercise of its
police power. Generally speaking the police power of the State
includes the authority to restrict the pursuit of any business
or occupation which is injurious to the health, peace, security
or morals of the public, or to the general welfare of society.
A business which concerns the public at large calls for an ex-
ercise of State regulation. The Legislature may, under the
public welfare clause of the State Constitution, enact laws
regulating the conduct of lawful business in the State. It may,
in the interest and for the protection of the public, prescribe
the mode or manner in which business may be conducted or trans-
acted. (See Texas Jurisprudence, Vol. 9, page 514 and Ruling
Case Law, Vol. 6, page 217 and the authorities cited therein)

It is stated in Texas Jurisprudence Vol. 9, page
507:

"However, neither the 'contract' clause
nor the 'due process' clause has the effect of
overriding the power of the state to establish
all regulations that are reasonably necessary
to secure the health, safety, good order, com-
fort or general welfare of the community. The
exercise of the police power upon subjects lying
within its scope, in a proper and lawful manner,
is due process of law. The decisive question
is whether or not the action is sustained by the
existence of facts affecting the public welfare
sufficient to justify such an application of the
police power. The answer to this question de-
termines whether or not the action constitutes
due process of law. The mere fact that a law
necessary for the welfare of society regulates
trade or business, or to some degree operates
as a restraint thereon, does not make it uncon-
stitutional."

The police power cannot be used for the purpose alone
of raising revenue, the fact that an assessment under police
power results in producing revenue does not deprive the assess-
ment of the character of the police regulation. (Brown vs. City
of Galveston, 75 S.W. 488)

We quote from Texas Jurisprudence, Vol. 24, page 1311 as follows:

"The State may impose upon nonresident in-
surance companies such conditions precedent  to
the right to do business in the state as are
deemed proper.  Thus the state may require the
filing of a power of attorney authorizing serv-
ice of process upon any agent, officer or repre-
sentative of the company,  the  procuring  of a
certificate from the insurance commissioners,
the filing of a bond, and the making of a special
deposit as a trust fund for the protection of
obligations arising under policies issued within
the state. . . . . . .

"A foreign insurance company which has
elected to do business in Texas is deemed to
have consented to be governed by the insurance
laws of Texas, irrespective of their constitu-
tionality.  Such a corporation may not contest
the validity of its contracts on the ground that
it has not complied with local laws."

A foreign corporation is required, as a condition pre-
cedent to the right to do business in the State, to obtain a
certificate of authority from the Insurance Commissioner.
(Articles 4686, 4687, 4701, 5059 V.A.C.S.)

It is stated in American Jurisprudence Vol. 29, page
70:

"As is true with respect to foreign cor-
portation generally, a state may entirely exclude
foreign insurance companies from the transaction
of business within its boundaries, or may pre-
scribe such conditions of admission not in con-
flict with applicable provisions of the Federal and
State constitutions as it desires . . . . .

"No insurance company has the right to sell
insurance in a state without complying with the
statutes embodying such conditions of admission.
As a condition of its admission to do an insurance
business within the state, a foreign insurance
company may, for example, be required to secure a
license or certificate allowing it to carry on such
business; to possess a specified amount of capital
paid-up and unimpaired; to have additional assets
sufficient to offset its liabilities, including
reserves on its risks; to deposit security for the

performance of its obligations within the state; or to appoint a state official or a local or statutory agent to receive service of process. Likewise, a state may, in effect, impose a condition upon the right of insurance companies to do business therein, by declaring that contracts shall be construed and interpreted according to the law of that state, notwithstanding the statute annuls the provisions of a policy which contravenes the statute . . . . . . ."

We quote from American Jurisprudence, Vol. 29, page 72 as follows:

"The well-established rule is that the issuance of a policy of insurance is not a transaction of commerce and, although made with a corporation organized or having its office in a state other than that in which the insured resides and in which the interest insured is located, is not interstate commerce. Insurance is not a commodity to be shipped or forwarded from one state to another. As a consequence, the regulation by a state of foreign insurance companies within its borders, or contracts made with such companies within the state, is not invalid as a regulation of interstate commerce. . . . . . ."

It is stated in American Jurisprudence Volume 29, page 79:

"A state may prescribe that a foreign insurance company may not transact an insurance business within the state except through lawfully authorized or duly licensed agents, or that an agent of such company in order to act for it must be duly licensed; and the rights of one applying for a license to act as agent for such insurance company are contigent upon the compliance of the company with conditions precedent to its right to appoint such an agent . . . . . ."

In answer to your first question, it is our opinion that prior to the effective date of Senate Bill 357, supra, no insurance company organized under the laws of the Republic of Mexico had any legal authority to do business in this state without securing a certificate of authority as required by Article 4686, V.A.C.S., and that neither licensed nor unlicensed agents had any authority whatsoever to represent said companies as agents, as the term "insurance agent" is defined by Article

568 of Vernon's Annotated Penal Code and Article 5062b, V.A.C.S.
(Also see Article 5056, V.A.C.S. and Article 572, V.A.P.C.)

In answer to your second question, you are respectfully advised that it is our opinion that Senate Bill 375, supra, (Article 5012a, V.A.C.S.) is mandatory in the sense that it requires insurance companies organized under the laws of the Republic of Mexico to comply with its provisions as a condition precedent to doing business in this State and unless such company or companies desiring to do business in this State comply with the provisions thereof such company or companies are not authorized to do business in Texas. In other words any insurance company organized under the laws of the Republic of Mexico desiring to do the kind of insurance business as authorized by Senate Bill 357, supra, must comply with the provisions thereof before it can legally engage in such business in this State.

By your third question you inquire as to the constitutionality of said Senate Bill 357, supra, and in answer thereto, you are respectfully advised that it is our opinion that said act does not violate or contravene any provision of the Federal or State constitution that has come to our attention or been considered in connection with your request. In other words we are not aware of any provision of either the Federal or State constitution that is violated by said act.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Ardell Williams
Ardell Williams
Assistant

AW:ff:wc

APPROVED SEP 15, 1943
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman